IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| TOPPERS SALON & HEALTH SPA, INC., | |
| *Plaintiff*, | Case No. 2:20-cv-03342-JDW |
| v. | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | |
| *Defendant*. | |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Richard D. Gable, Jr. (Pa. ID No. 65842)
Butler Weihmuller Katz Craig LLP
1818 Market Street
Suite 2740
Philadelphia, PA 19103
Tel: 215-405-9191
Fax: 215-405-9190
E-mail: rgable@butler.legal

Gregory P. Varga (admitted *pro hac vice*)
J. Tyler Butts (admitted *pro hac vice*)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103
Tel: 860-275-8200
Fax: 860-275-8299
E-mail: gvarga@rc.com
E-mail: jbutts@rc.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ...................................................................................................... 1

II.     LEGAL STANDARDS ............................................................................................. 3

        A.      Summary Judgment Standard .................................................................. 3

        B.      Pennsylvania Principles of Insurance Policy Interpretation ................... 4

III.    POLICY PROVISIONS RELEVANT TO PLAINTIFF'S MOTION............................. 5

IV.     ARGUMENT ............................................................................................................ 7

        A.      The Policy's Virus Exclusion Applies as a Matter of Law...................... 8

        B.      This Court Must Ignore Many of the Factual Assertions Set Forth in
                Plaintiff's Memorandum Because They Lack the Evidentiary Support
                Required by Fed. R. Civ. P. 56(c).......................................................... 13

        C.      As a Matter of Law, Plaintiff is Not Entitled to Business Income Coverage ....... 15

        D.      Plaintiff Has Failed to Establish Entitlement to Civil Authority Coverage
                as Matter of Law ................................................................................... 25

IV.     CONCLUSION....................................................................................................... 29

CERTIFICATE OF SERVICE ........................................................................................ 31

# TABLE OF AUTHORITIES

**Cases**

*Aman v. Cort Furniture Rental Corp.*,
    85 F.3d 1074 (3d Cir. 1996)................................................................4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ......................................................................3

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................4

*Collins v. Mary Kay, Inc.*,
    874 F.3d 176 (3d Cir. 2017)................................................................4

*Compare Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*,
    311 F.3d 226 (3d Cir. 2002)................................................................21

*Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*,
    774 N.Y.S.2d 710 (N.Y. App. Div. 2004) ......................................................24

*Dickie Brennan & Co. v. Lexington Ins. Co.*,
    636 F.3d 683 (5th Cir. 2011) ..............................................................27

*Diesel Barbershop, LLC, et al. v. State Farm Lloyds*,
    2020 WL 4724305 (W.D. Tex. Aug. 13, 2020)............................ 12, 13, 18, 19

*Duarte & Witting, Inc. v. Universal Underwriters Ins. Co.*,
    2006 WL 2130743 (N.D. Cal. July 27, 2006)..................................................24

*Gavrilides Management Co. v. Michigan Ins. Co.*
    Case No. 20-258-CB, (Mich. Cir. Ct. for Ingham County, Tr. of July 1, 2020) .. 11, 13, 18

*Guardian Life Ins. Co. of Am. v. Zerance*,
    479 A.2d 949 (Pa. 1984) ............................................................ 5, 12

*Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*,
    486 S.E.2d 249 (N.C. App. 1997)............................................................20

*Herr v. Forghani*,
    161 Wash. App. 1037, 2011 WL 1833829, (2011)........................................21

*HTI Holdings, Inc. v. Hartford Cas. Ins. Co.*,
    2011 WL 4595799 (D. Or. Aug. 24, 2011)..................................................9

*Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*,
    858 F.2d 128 (3d Cir. 1988)................................................................5

*In re Bressman*,
    327 F.3d 229 (3d Cir. 2003)........................................... 4, 13, 18, 27

*Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*,
    127 A.D.3d 922 (N.Y. App. Div. 2015) ......................................................24

*J. O. Emmeric & Assocs., Inc. v. State Auto Ins. Cos.*,
    2007 WL 9775576 (S.D. Miss. Nov. 19, 2007 ..............................................21

*Jernigan v. Nationwide Mut. Ins. Co.*,
   2006 WL 463521 (N.D. Cal. Feb. 27, 2006) .................................................................... 24

*Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*,
   2014 WL 1041831 (S.D.N.Y. Mar. 18, 2014) ................................................................... 24

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*,
   2010 WL 4026375 (E.D. La. Oct. 12, 2010) .................................................................... 28

*Legal Servs. Plan of E. Michigan v. Citizens Ins. Co. of Am.*,
   2009 WL 1175514 (Mich. Ct. App. Apr. 30, 2009) ........................................................ 24

*Matzner v. Seaco Ins. Co.*, 9 Mass. L. Rptr. 41,
   1998 WL 566658 (Mass. Sup. Ct. Aug. 12, 1998) .......................................................... 21

*Motorists Mut. Ins. Co. v. Hardinger*,
   131 Fed. Appx. 823 (3d Cir. 2005) ................................................................................. 22

*Nationwide Mut. Ins. Co. v. West*,
   807 A.2d 916 (Pa. Super. Ct. 2002) .................................................................................. 4

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
   17 F. Supp. 3d 323 (S.D.N.Y. 2014) ........................................................................ 21, 22

*Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*,
   2014 WL 12480022  (N.D. Ga. May 23, 2014) ............................................................... 20

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. Black*,
   916 A.2d 569 (Pa. 2007) .................................................................................................. 12

*Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*,
   106 A.3d 1 (Pa. 2014) ........................................................................................................ 5

*Pentair, Inc. v. American Guar. and Liab. Ins. Co.*,
   400 F.3d 613 (8th Cir. 2005) ........................................................................................... 20

*Philadelphia Parking Auth. v. Fed. Ins. Co.*,
   385 F. Supp. 2d 280 (S.D.N.Y. 2005).............................................................................. 22

*Resolution Trust Corp. v. Gill,*
   960 F.2d 336 (3d Cir. 1992)............................................................................................... 4

*Riccio v. Am. Republic Ins. Co.*,
   705 A.2d 422 (Pa. 1997) .................................................................................................. 22

*Rose's 1 LLC, et al. v. Erie Insurance Exchange*,
   2020 WL 4589206 (D.C. Super. Ct. Aug. 6, 2020) ........................................................ 19

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
   302 A.D.2d 1 (N.Y. App. Div. 2002) ........................................................................ 20, 23

*Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*,
   006 WL 2850465 (D. Or. Sept. 29, 2006) ...................................................................... 23

*Sentinel Management Co. v. New Hampshire Ins. Co.*,
   563 N.W.2d 296 (Minn. App. Ct. 1997).......................................................................... 21

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
    No. 20 Civ. 3311 (VEC), tr. at 5 (S.D.N.Y. May 14, 2020) .............................................. 17

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,
    2008 WL 450012 (S.D. Tex. Feb. 15, 2008) ................................................................... 28

*State Farm Mutual Auto Ins. Co. v. Universal Underwriters Ins. Co.*,
    549 Pa. 518, 701 A.2d 1330 (1997) ................................................................................. 4

*Stephens v. Liberty Mut.*,
    2008 WL 480287 (N.D. Cal. Feb. 19, 2008) ................................................................... 24

*Steuart v. McChesney*,
    444 A.2d 659 (Pa. 1982) .................................................................................................. 5

*Toffler Assocs., Inc. v. Hartford Fire Ins. Co.*,
    651 F. Supp. 2d 332 (E.D. Pa. 2009) ............................................................................. 23

*Triangle Publications, Inc. v. Liberty Mut. Ins. Co.*,
    703 F. Supp. 367 (E.D. Pa. 1989) .................................................................................... 4

*United States v. Four Parcels of Real Property*,
    1428 (11th Cir. 1991) ...................................................................................................... 4

## Other Authorities

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. ......................................................... 4

## Rules

Fed. R. Civ. P.  56(c) ...................................................................................... 2, 3, 13, 15

## I.    INTRODUCTION

In this action for breach of contract, Plaintiff Toppers Salon & Health Spa, Inc. ("Plaintiff") contends that Defendant Travelers Property Casualty Company of America ("Travelers") improperly declined to provide insurance coverage for certain financial losses Plaintiff claims to have sustained in connection with the virus known as "SARS-CoV-2" and the disease it causes, COVID-19.  Plaintiff maintains that directives issued by the Governors of the jurisdictions in which it operates its salons and health spas (Pennsylvania, New Jersey, and Delaware) required Plaintiff to pause its business operations and incur certain "continuing normal operating expenses."  According to Plaintiff, the Business Income and Civil Authority provisions of the policy Travelers issued to Plaintiff (ECF No. 15-1) (the "Policy") cover those alleged expenses.

In its Memorandum in Support of its Motion for Partial Summary Judgment (ECF No. 5-1) (the "Memo."), Plaintiff acknowledges, correctly, that in order for coverage to exist, "[Plaintiff's] claim must be encompassed by one or more of the insuring agreements in the [P]olicy" and that "none of the exclusions in the [P]olicy can be applicable."  (Memo., pg. 1). Through its Motion, Plaintiff essentially seeks the following legal rulings:  (1) that the Policy's exclusion for loss caused by or resulting from a virus does not apply, as a matter of law, to claims for "continuing normal operating expenses" arising from the COVID-19 pandemic; (2) that the undisputed material facts establish that Plaintiff's claim falls within the insuring agreement set forth in the Policy's Business Income provisions; and (3) that the undisputed facts establish that Plaintiff's claim is encompassed in the insuring agreement set forth in the Policy's Civil Authority provisions.  Plaintiff is not entitled to these rulings, and its Motion for Partial Summary Judgment should be denied, for the following reasons:

*First*, Plaintiff's legal theory is that the Policy's virus exclusion applies only to "loss or damage caused by or resulting from any virus," and that the "continuing normal operating expenses" claimed by Plaintiff do not constitute "loss or damage" within the meaning of the virus exclusion. The virus exclusion, however, expressly applies to "<u>all</u> coverage under <u>all</u> forms and endorsements . . . including but not limited to forms or endorsements that cover. . . business income. . . or action of <u>civil authority</u>." (Policy, pg. 82 of 101) (emphasis added).[1] Moreover, the coverage provided under Policy's Business Income and Civil Authority provisions is for "<u>actual loss of Business Income</u>" sustained by the Plaintiff. "Continuing normal operating expenses" are simply part of the method specified for determining the amount of a covered "actual loss of Business Income" in circumstances where the Policy provides coverage. <u>Such expenses are not separately insured</u>, but are expressly included within the Policy's definition of Business Income and, also, are expressly addressed in the Policy provision that prescribes how to determine the "actual loss of Business Income" sustained by an insured. Plaintiff's theory that the Policy's virus exclusion does not apply to its claim under the Policy's Business Income and Civil Authority coverages flies in the face of the plain language of both the virus exclusion endorsement and the Policy's Business Income provisions.

*Second*, even assuming, *arguendo,* that the Policy's virus exclusion does apply to Plaintiff's claim (it does), Plaintiff still would not be entitled to the requested ruling regarding coverage under the Policy's Business Income provisions. Plaintiff simply has not met, and cannot meet, its burden under Federal Rule of Civil Procedure 56(c) of supplying evidence to

---

[1] Citations to specific pages of the Policy refers to the numbering located at the bottom right of each Policy page.

establish the elements set forth in the insuring agreement for Business Income coverage.  And even if what Plaintiff contends are "facts" were established, there still would be no coverage.

*Third*, Plaintiff similarly is not entitled to the requested ruling regarding coverage under the Policy's Civil Authority provisions because Plaintiff has not met, and cannot meet, its burden of supplying evidence that establishes the elements set forth in the insuring agreement for Civil Authority coverage.  And again, even if what Plaintiff contends are "facts" were established there still would be no coverage.

Because, as a matter of law, the Policy's virus exclusion applies to a loss that involves "continuing normal operating expenses," and because Plaintiff has failed to and cannot establish either the required elements of Business Income coverage or the required elements of Civil Authority coverage, Plaintiff is not entitled to the requested partial summary judgment, and Plaintiff's Motion should be denied.

## II.     LEGAL STANDARDS

### A.     Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The party moving for summary judgment under Fed. R. Civ. P. 56(c) must affirmatively demonstrate the absence of any genuine issues of material fact.  *Aman v. Cort Furniture Rental*

*Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).  Where, as in this case, the moving party bears the

burden of proof at trial, it must satisfy its summary judgment burden by supporting its motion

"with credible evidence…that would entitle [it] to a directed verdict if not controverted at trial."

*In re Bressman,* 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett,* 477 U.S.

317, 331 (1986) (Brennan, J., dissenting)).  "'In other words, the moving party must show that,

on all the essential elements of its case on which it bears the burden of proof at trial, no

reasonable jury could find for the nonmoving party.'"  *Id.*  (quoting *United States v. Four*

*Parcels of Real Property,* 1428, 1438 (11th Cir. 1991)).  If the moving party "has failed to satisfy

its burden of demonstrating that there is no genuine issue of material fact, the court should deny

the motion for summary judgment, even if the opposing party has offered no response.

*Resolution Trust Corp. v. Gill,* 960 F.2d 336, 340 (3d Cir. 1992).

> ### B.    Pennsylvania Principles of Insurance Policy Interpretation

Interpretation of an insurance contract is a question of law for the Court.  *State Farm*

*Mutual Auto Ins. Co. v. Universal Underwriters Ins. Co.*, 549 Pa. 518, 701 A.2d 1330, 1331

(1997).[2]  When interpreting an insurance policy, a court must ascertain the intent of the parties as

manifested by the language of the written agreement.  *Id.*  The language of the contract "must be

---

[2] The parties agree that Pennsylvania law controls. This Court, sitting in diversity jurisdiction, applies the choice of law rules of the forum state, i.e., Pennsylvania. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017). Pennsylvania applies "the law of the state having the most significant contacts or relationships with the contract." *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 921 (Pa. Super. Ct. 2002). In insurance coverage disputes, Pennsylvania courts give the principal location of the insured risk "greater weight than any other single contact." *Triangle Publications, Inc. v. Liberty Mut. Ins. Co.*, 703 F. Supp. 367, 370 (E.D. Pa. 1989) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193, cmt. b). Here, four of the six locations insured under the Policy are located in Pennsylvania. And, Pennsylvania has other important connections to the parties and their dispute. The sole Named Insured identified in the Policy is Toppers Salon & Health Spa, Inc., a Pennsylvania corporation with a principal place of business in Philadelphia. (Complaint, ECF No. 1, ¶ 7) ("Compl."). In addition, the Policy was delivered to Plaintiff at 1500 Walnut Street, Philadelphia, Pennsylvania. (Policy, pgs. 2-3 of 101).

construed in its plain and ordinary sense, and the policy must be read in its entirety." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014). "When the language of an insurance policy is plain and unambiguous, a court is bound by that language." *Id.* Moreover, "policy terms should be read to avoid ambiguities," and "a court cannot rewrite the terms of a policy or give them a construction in conflict with the accepted and plain meaning of the language of the policy." *Imperial Cas. & Indem. Co. v. High Concrete Structures, Inc.*, 858 F.2d 128, 131 (3d Cir. 1988); *see also Guardian Life Ins. Co. of Am. v. Zerance*, 479 A.2d 949, 953 (Pa. 1984) ("We may not rewrite the insurance contract, under the guise of judicial interpretation, to expand the coverage beyond that as provided in the policy."). Additionally, courts do not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *Steuart v. McChesney,* 444 A.2d 659, 663 (Pa. 1982).

## III.    POLICY PROVISIONS RELEVANT TO PLAINTIFF'S MOTION

In its Motion, Plaintiff argues it is entitled to coverage under the Policy's Business Income and/or Civil Authority provisions for certain "continuing normal operating expenses" it claims to have incurred after it allegedly paused its business operations due to governmental orders issued to curb the spread of SARS-CoV-2 and COVID-19. (Compl., ¶ 23; Memo., pg. 20).[3] The portions of the Policy that are relevant to Plaintiff's Motion are found in the Business Income provisions, Civil Authority provisions, and the endorsement entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA."

The Policy's Business Income provisions state in relevant part:

---

[3] Plaintiff's Motion includes no evidence indicating that it incurred any "continuing normal operating expenses," so it appears that Plaintiff is asking the Court to assume such expenses were incurred. This is not simply an issue of the measure of damages; it is a question of whether Plaintiff has met its basic burden of production at summary judgment. It has not.

**A.      Coverage**

      **1.      Business Income**

            a.      Business Income means the:

                    (1)      Net Income (Net Profit or Loss before income taxes) that would have earned or incurred; plus

                    (2)      Continuing normal operating expenses incurred, including payroll.

          * * *

            c.      We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

          * * *

**D**.   **Loss Conditions**

          * * *

      **3.      Loss Determination**

            **a.**      The amount of Business Income loss will be determined based on:

                    **(1)**      The Net Income of the business before the direct physical loss or damage occurred;

                    **(2)**      The likely Net Income of the business if no physical loss or damage occurred….

                    **(3)**      The operating expenses, including payroll expenses, to the extent insured, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

                    **(4)**      Other relevant sources of information, including:

                        **(a)**      Your financial records and accounting procedures;

                        **(b)**      Bills, invoices and other vouchers; and

                        **(c)**      Deeds, liens or contracts.

(Policy, pgs. 41, 46-47 of 101).

The Policy's Civil Authority Provision states, in relevant part:

6

3.      **Additional Coverages**
        * * *
a.      **Civil Authority**
        * * *
        When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense <u>caused by action of civil authority that prohibits access to the described premises</u>, provided that both of the following apply:

(1)     <u>Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage</u>, and the described premises are within that area but are not more than one mile from the damaged property; and

(2)     The action of civil authority is <u>taken in response to dangerous physical conditions</u> resulting from the damage or <u>continuation of the Covered Cause of Loss that caused the damage</u>, or the action is <u>taken to enable a civil authority to have unimpeded access</u> to the damaged property.

(Policy, pg. 42 of 101) (emphasis added).

The Policy's virus exclusion endorsement states in relevant part:
                    EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA.
        * * *
A.      The exclusion set forth in Paragraph B. applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover business income . . . or action of civil authority.

B.      We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Policy, pg. 82 of 101).

## IV.   ARGUMENT

Plaintiff is not entitled to partial summary judgment because the law and the plain

language of the Policy do not support the legal rulings it requests, and because it has failed to

7

carry its burden of providing evidentiary support for the essential elements of the Policy's Business Income and Civil Authority coverages.  With regard to the applicability of the Policy's virus exclusion, Plaintiff acknowledges that the exclusion applies to a "loss of Business Income" that is caused by a virus such as SARS-CoV-2.  (Memo., p. 26).  Plaintiff also concedes that the only loss for which it seeks Business Income coverage is "continuing normal operating expenses" which are included in the Policy's definition of "Business Income."  (*Id.*, pgs. 1, 22). Those concessions are fatal to Plaintiff's Motion and to its breach of contract claim.  Moreover, even assuming for purposes of argument that the virus exclusion does not apply (which, again, it does as a matter of law), Plaintiff still would not be entitled to partial summary judgment because there is a <u>complete</u> failure of proof on nearly every element of the insuring agreements for Business Income and Civil Authority coverages.  Even based on what Plaintiff claims (without any evidentiary support) to be the facts, there would be no coverage, as a matter of law.

**A.     The Policy's Virus Exclusion Applies as a Matter of Law**

Plaintiff – which again is seeking coverage under the Policy's Business Income and/or Civil Authority provisions – <u>concedes</u> that "the virus exclusion eliminates coverage for a claim for lost income (a 'loss')."  (Memo., pg. 26).  Plaintiff nonetheless insists that the "continuing normal operating expenses" for which it seeks coverage under the Business Income and Civil Authority provisions are not a "loss" and therefore, the virus exclusion does not eliminate coverage for them.  (*Id.*).  The plain language of both the Policy's virus exclusion endorsement and its Business Income provision demonstrate that Plaintiff is incorrect as a matter of law.

The Policy's virus exclusion endorsement states

A.     The exclusion set forth in Paragraph B. applies to <u>*all* coverage</u> under <u>*all* forms and endorsements</u> that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover business income . . . or action of civil authority.

> B.    We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Policy, pg. 82 of 101) (emphasis added).

Thus, the virus exclusion set forth in Paragraph B expressly and unambiguously applies to "_all_ coverage" under the Policy's Business Income and Civil Authority provisions.  That alone is fatal to Plaintiff's theory that the virus exclusion does not apply to expenses for which coverage is provided, in certain circumstances, under the Business Income and Civil Authority provisions.

Plaintiff's theory is that, by limiting its claim under the Business Income and Civil Authority coverage to "continuing normal operating expenses," Plaintiff can avoid application of the virus exclusion.  This theory defies the plain language of the Policy.  The coverage grants set forth in the Policy's Business Income and Civil Authority provisions are limited to the "actual loss of Business Income" sustained by the insured. (Policy, pg. 41 of 101).  The term "Business Income" is defined to include two elements:

> (1) Net Income (Net Profit or Loss before income taxes) that would have earned or incurred; plus

> (2) Continuing normal operating expenses incurred, including payroll.

(_Id._) (emphasis added).  Thus, "continuing normal operating expenses" are an essential part of what the Policy defines as "Business Income."  This formula for measuring Business Income requires, without exception, that these two elements be considered together in determining whether there is any "actual loss of Business Income" for which Travelers is responsible under the contract.  *See HTI Holdings, Inc. v. Hartford Cas. Ins. Co.*, No. 10-CV-06021-TC, 2011 WL 4595799, at *13 (D. Or. Aug. 24, 2011), *report and recommendation adopted*, No. CIV. 10-

6021-AA, 2011 WL 6205903 (D. Or. Dec. 8, 2011) (explaining, under similar policy language, that "profit or loss and continuing operating expenses are jointly considered."). Contrary to Plaintiff's interpretation, "continuing normal operating expenses" <u>are not separately insured under the Policy</u>. This conclusion is further supported by the "Loss Determination" condition of the Policy's Business Income (And Extra Expense) Coverage Form, which governs the determination of the amount of Business Income loss, and which explains that "[t]he amount of Business Income <u>loss</u> will be determined" based on a specified methodology that takes into account, among other things, operating expenses. (Policy, pgs. 46-47 of 101) (emphasis added). The Loss Determination provision provides:

> **3.    Loss Determination**
>
> > **a.**    The amount of <u>Business Income loss</u> will be determined based on:
> >
> > > **(1)**    The <u>Net Income of the business before the direct physical loss</u> or damage occurred;
> > >
> > > **(2)**    The <u>likely Net Income of the business if no physical loss</u> or damage occurred….
> > >
> > > **(3)**    The <u>operating expenses, including payroll expenses</u>, to the extent insured, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage;…

(Policy, pg. 46 of 101) (emphasis added).

The Policy's Business Income provisions unequivocally provide that "continuing normal operating expenses" must be included in the determination of the amount of loss of Business Income, if any, an insured has actually sustained. An actual loss of Business Income is the only loss that is covered under the Business Income provisions and the Civil Authority provisions; there are no separate coverage grants for "continuing normal operating expenses." Because the virus exclusion unambiguously bars coverage for any loss of "Business Income" caused by or

resulting from a virus – whether claimed under the Civil Authority provision, the Business

Income provision, or any other Policy provision – Plaintiff is not entitled to coverage for the

financial impact of SARS-CoV-2 or COVID-19 as a matter of law.

The conclusion that the virus exclusion bars coverage is reinforced by several recent

decisions involving business income claims arising from the COVID-19 pandemic.  In

*Gavrilides Management Co. v. Michigan Ins. Co.*, a Michigan Circuit Court ruled that an

identical virus exclusion applied to bar coverage for the insured restaurant's claim under Civil

Authority coverage.  (Case No. 20-258-CB, Mich. Cir. Ct. for Ingham County, Tr. of July 1,

2020 Hearing, pg. 20-21) (attached as Exhibit 1 hereto).  In so ruling, the court rejected the

insured's argument that the exclusion was vague and did not apply to civil authority coverage,

and concluded that the exclusion "supplies a completely workable, understandable, usable

definition of the word virus."  (*Id.*).  Here, as in *Gavrilides,* there is no question that SARS-CoV-

2 is not a Covered Cause of Loss and, therefore, cannot give rise to coverage under the Civil

Authority or Business Income coverages.

In an attempt to avoid this outcome, Plaintiff argues that the "immediate cause" of its

alleged business interruption and financial losses was not SARS-CoV-2 but what it vaguely calls

"the government directive" that prompted Plaintiff to pause its operations.  (Memo. pg. 8).  This

argument fails for several reasons.

*First*, Plaintiff concedes in its Memorandum that the government orders upon which it

relies are inextricably linked to the reason they were issued:  SARS-CoV-2.  (*See id.*, pg. 3)

(describing the government orders as "virus related directives").  Plaintiff cannot avoid the

application of the virus exclusion by re-characterizing its loss as one caused by "the government

directive" that was issued to slow the spread of the virus rather than being caused by the virus

itself.  Plaintiff's theory is also inconsistent with the language of the virus exclusion.  The virus

exclusion expressly applies to the Civil Authority and Business Income coverages, which only

apply where, among other requirements, a business has been forced to suspend its operations.

But a virus cannot, in and of itself, close a business; rather, some form of human intervention

(such as by government order) is obviously required to cause a Business Income loss.  To adopt

Plaintiff's theory that "the government directive," divorced from its underlying purpose,

constitutes a Covered Cause of Loss would render the virus exclusion nugatory, "rewrite" the

Policy, *Guardian Life*, 479 A.2d at 953, and "allow recovery . . . despite the unambiguous

language of the insurance policy," thus "provid[ing] coverage for which premiums have not been

paid."  *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Black*, 916 A.2d 569, 581 (Pa. 2007) (noting that

"[w]e have repeatedly enforced contractual language to avoid gratis coverage").  Such an

outcome is not justified.

     In *Diesel Barbershop, LLC, et al. v. State Farm Lloyds,* 2020 WL 4724305 (W.D. Tex.

Aug. 13, 2020), the court concluded that a similar virus exclusion precluded coverage for

business income losses resulting from the COVID-19 pandemic.  Granting the insurer's motion

to dismiss, the court rejected the same argument that Plaintiff puts forth here—that government

orders issued to mitigate the spread of the virus were the cause of loss rather than the virus.  The

court explained that:

> Plaintiffs have pleaded that COVID-19 is in fact the reason for the [government] Orders being issued and the underlying cause of Plaintiffs' alleged losses. While the Orders technically forced the Properties to close to protect public health, <u>the Orders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community. Thus, it was the presence of COVID-19 in Bexar County and in Texas that was the primary root cause of Plaintiffs' businesses temporarily closing.</u>

*Id.* at *6 (emphasis added).[4]  The plaintiff in *Gavrilides, supra,* similarly argued that the virus exclusion did not apply to business income losses because "the damage caused was really caused by actions of the civil authority to protect public health." (Ex. 1, pg. 21). The court flatly rejected plaintiff's theory.  (*Id.*)  ("[T]he plaintiff has not supported that [the virus exclusion] doesn't apply . . . .").  Here, as in *Diesel Barbershop* and *Gavrilides*, there is no question that the plain language of the virus exclusion bars coverage for the loss of Business Income alleged by Plaintiff.  Because Plaintiff's claim fails as a matter of law based on the virus exclusion, its Motion for Partial Summary Judgment must be denied on that basis alone.

    **B.**    **This Court Must Ignore Many of the Factual Assertions Set Forth in Plaintiff's Memorandum Because They Lack the Evidentiary Support Required by Fed. R. Civ. P. 56(c).**

The virus exclusion bars coverage for Plaintiff's claim as a matter of law, and justifies both the denial of Plaintiff's Motion for Partial Summary Judgment and the grant of Travelers' Motion for Judgment on the Pleadings, filed herewith. However, Plaintiff's Motion for Partial Summary Judgment should be denied for the further reason that it fails to provide the evidentiary support required by Fed. R. Civ. P. 56(c).  As the party with the burden of proof, Plaintiff was required to show, through credible evidence, "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party.'"  *In re Bressman,* 327 F.3d at 237. In addition, pursuant to the Policies and Procedures of this Court, Plaintiff was required to submit a statement of all undisputed material facts supporting its Motion "in numbered paragraphs, <u>with appropriate citations to the record</u>."  *See*

---

[4] The court in *Diesel Barbershop* also discussed an anti-concurrent causation clause in the virus exclusion in the policy at issue. *Id.* at *6-7. The anti-concurrent causation clause was not essential to the outcome, however, because the court concluded that the virus was the "primary root cause." *Id.* at *6.

Pol. & Proc. of Hon. Joshua D. Wolson (https://www.paed.uscourts.gov/documents/procedures/wolpol.pdf) (emphasis added).  Plaintiff satisfied neither of these crucial requirements in presenting its Motion.

Plaintiff's Statement of Undisputed Material Facts (ECF No. 5-9 (hereinafter "SUMF")) consists of a mere five paragraphs.  Only a small fraction of the factual assertions referenced in Plaintiff's Memorandum are included in the Court-mandated Statement of Undisputed Materials Facts.  Equally important, Plaintiff has provided no evidence to support the vast majority of the factual assertions that are omitted from that Statement of Undisputed Material Facts.  The following are among the factual statements in Plaintiff's Memorandum that must be disregarded because they are not supported by either the Statement of Undisputed Material Facts or by admissible evidence.

**Unsupported statements relevant to Plaintiff's claim for Business Income coverage:**

- "The virus is on surfaces, including building surfaces, from which the virus can come into contact with people." (Memo., pg. 10);
- The virus "either was already in [Plaintiff's] building, or would inevitably have entered the building…" (*Id.*, pg. 14);
- "[F]uture inevitable property damage…cause[d] a suspension" of Plaintiff's operations. (*Id.*, pg. 17);
- Plaintiff suspended its business operations at the five locations for which Travelers provides insurance for Business Income. (*Id.*, pg. 4); and
- Plaintiff's "buildings could not be used between late March 2020 and July 2202 [sic] because of government directives." (*Id.*, pg. 8).

**Unsupported statements relevant to Plaintiff's claim for Civil Authority coverage:**

- Virus was present "on building surfaces in areas where [Plaintiff] operated in Pennsylvania, Delaware and New Jersey." (*Id.*, pg. 9);
- The "virus was on surfaces throughout the locales in which [Plaintiff] operated…necessarily including surfaces within one mile of [Plaintiff's] buildings." (*Id.*, pg. 15);

- "[T]he governments' closure and stay-at-home directives were caused, in part, by the <u>risk</u> of a physical detriment to property." (*Id.*, pg. 10) (emphasis in original);
- "[O]ne of the reasons for the government's shut down order was property damage (arising for example from the presence of the virus on surfaces in the buildings for up to four days…." (*Id.*, pg. 16);
- "[T]he government directives were caused, in part, by their concern that, absent a closing of the buildings to business, the building would inevitably become infested with virus, and…as a result, the government directives can be said to have been caused by property damage…." (*Id.*, pg. 18); and
- "[T]he government also prohibited access at those locations [within one mile of [Plaintiff's] buildings." (*Id.*, pg. 15).

Plaintiff's failure to support the above assertions is not a deficiency that can be overlooked or dismissed as a mere oversight.  It is a wholesale failure of proof that defies Rule 56(c) and requires the Court to ignore the unsupported assertions in ruling on this Motion.  Moreover, the Court need not await discovery or further factual development before reaching a decision that Plaintiff's position is incorrect as a matter of law.  As explained below, and as set forth in Travelers' Motion for Judgment on the Pleadings, Plaintiff has not pled and cannot prove facts supporting an entitlement to coverage under the Policy.

**C.    As a Matter of Law, Plaintiff is Not Entitled to Business Income Coverage**

As explained above, Plaintiff's Motion should be denied because its claimed loss falls squarely within the Policy's virus exclusion.  However, even if one were to assume for purposes of argument that the virus exclusion does not apply, Plaintiff still would not be entitled to a ruling that it is entitled to coverage under the Business Income provisions, as Plaintiff has not supplied, and cannot supply, evidence capable of establishing all of the requirements set forth in the insuring agreement for Business Income coverage.

The requirements for Business Income coverage are stated in terms that are plain and clear.  The insuring agreement provides that:

> c.      We [Travelers] will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Policy, pg. 41 of 101).  Thus, to be entitled to Business Income coverage at one or more of the five locations for which a Business Income Limit of Insurance is shown in the Declarations (the "Relevant Premises"),[5] Plaintiff must adduce evidence proving, as a matter of undisputed fact, that:

- There was a necessary "suspension" of its "operations" at one or more of the Relevant Premises (where "suspension" is defined as a "partial or complete cessation of your business activities…" and "operations" are defined as "[y]our business activities occurring at the described premises") (Policy, pgs. 41, 50-51 of 101);[6]

- The "suspension" was "caused by direct physical loss of or damage to property at the [the relevant premises]" (*Id.*, pg. 41 of 101); and

---

[5] The "premises which are described in the Declarations" are the four Pennsylvania locations (Loc. 1, Bldg. 1 through Loc. 4, Bldg. 4), one New Jersey location (Loc. 5, Bldg. 5) and one Delaware location (Loc. 6, Bldg. 6) listed on the Policy's Location Schedule at the time the Policy incepted. (Policy, pg. 9 of 101). However, the Commercial Property Coverage Part Declarations show a Business Income limit only for Locations 2 through 6, but not for Location 1 (1500 Walnut Street, Suite 1608, Philadelphia, PA 19102). (*Id.*, pgs. 12-14 of 101). Thus, Travelers does not provide Business Income coverage for Plaintiff's 1500 Walnut Street location.

[6] The "period of restoration" is defined as: "the period of time after direct physical loss or damage caused by or resulting from a Covered Cause of Loss at the described premises which: **a.** Begins: **(1)** Unless a different time period is shown in the Declarations, 72 hours after the time of direct physical loss or damage for Business Income coverage…" and **b.** Ends on the earlier of: **(1)** the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or **(2)** The date when business is resumed at a new permanent location." (*Id.*, pgs. 50-51 of 101)

- The loss or damage was itself "caused by or result[ed] from a Covered Cause of Loss." (*Id.*).[7]

Plaintiff has failed to and cannot supply evidence capable of establishing the requisite "direct physical loss or damage to property" at any of the Relevant Premises.  Instead of the requisite evidence, Plaintiff offers a two-pronged argument regarding the existence of "physical loss of or damage to property."

*First*, Plaintiff argues that the mere presence of SARS-CoV-2 on a surface qualifies as "physical damage."  (Memo., pg. 1) (arguing that when SARS-CoV-2 "is on surfaces, including building surfaces, from which the virus can come into contact with people," it constitutes "physical damage.").  While Travelers disputes that the mere presence of SARS-CoV-2 on a surface constitutes, or is capable of causing, "physical damage" within the meaning of the Policy,[8] the Court need not reach that issue.  Plaintiff has provided no expert opinion or other evidence from which a trier of fact could possibly conclude that SARS-CoV-2 is capable of physically altering surfaces on which it comes to rest.  In addition, Plaintiff has offered no evidence that SARS-CoV-2 was in fact present on property at any of the insured Premises under the Policy at any time.  In lieu of such evidence, Plaintiff simply suggests SARS-CoV-2 might have been present or, at some unspecified time in the future, might become present at one or more of the insured premises.  Thus, Plaintiff asks the Court to simply assume both that SARS-

---

[7] As discussed above in Section IV.A., Plaintiff cannot satisfy this requirement because the virus exclusion precludes coverage.

[8] While it is not necessary for the Court to address this issue, Travelers notes that at least one court has ruled that the presence of SARS-CoV-2 on surfaces does not constitute direct physical loss of or damage to property as a matter of law. *See Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC), tr. at 5, 15 (S.D.N.Y. May 14, 2020) (Exhibit 2 hereto) (court explaining in case making allegations similar to Plaintiff's allegations that COVID-19 "damages lungs," "[i]t doesn't damage printing presses" or other property, and "this is just not what's covered under these insurance policies").

CoV-2 is capable of causing "physical damage" to property and that it either has already caused such physical damage or will do so at some unspecified future time.  But Plaintiff is not entitled to a <u>presumption</u> of physical damage.  As the party with the burden of proof at trial and the burden of production at summary judgment, it was required to prove the existence of "physical damage" at one or more of the relevant premises through undisputed <u>evidence</u>.  *See In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003).  This Plaintiff failed to do.  And even if Plaintiff could supply such evidence, there would be no coverage as a matter of law because the virus exclusion would apply, as explained above.

*Second*, Plaintiff argues that as a result of the governmental directives, Plaintiff was "unable to use its locations."  (Memo., pg. 7).  The argument that a loss of use of insured premises constitutes the "physical loss of or damage to property" required for Business Income coverage has been rejected by many courts, including several deciding business income coverage disputes arising from COVID-19.  In *Gavrilides Management Co. v. Michigan Ins. Co.*, Case No. 20-258-CB (Mich. Cir. Ct. for Ingham County Jul. 1, 2020), the insured restaurant owner sought business income coverage for losses allegedly sustained due to government orders preventing customers from consuming food and beverages in the restaurant's dining room.  The Michigan Circuit Court dismissed as "just simply nonsense" the plaintiff's suggestion that the inability to use insured premises satisfies the "physical loss" requirement of Business Income coverage, noting that "it comes nowhere close to meeting the requirement that there's some, there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building."  (Ex. 1, pgs. 20-21).  Similarly, in *Diesel Barbershop, LLC, et al. v. State Farm Lloyds,* 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020), the District Court found that the insured's claim for business income coverage arising from SARS-CoV-2 "fail[ed] to plead a

direct physical loss" because actions taken by civil authorities in order to stem the spread of the virus did not result in any "distinct, demonstrable physical alteration of the property." *Id*. at *5 (citations omitted).

The District of Columbia Superior Court applied similar reasoning in adjudicating the claims of a group of restaurants that sought business income coverage for losses stemming from governmental orders issued in response to the COVID-19 pandemic. Granting summary judgment in favor of the insurer, the court rejected the plaintiffs' position that governmental orders could cause direct physical loss of or damage to property that would trigger business income coverage, explaining that: "Standing alone and absent intervening actions by individuals and businesses, the orders did not effect any direct changes to the properties. . . . [T]he mayor's orders did not have any effect on the material or tangible structure of the insured properties." *Rose's 1 LLC, et al. v. Erie Insurance Exchange*, 2020 WL 4589206, at *2 (D.C. Super. Ct. Aug. 6, 2020). The court further stated that, even if it accepted the insured's argument that "loss of use" potentially could be covered, "any 'loss of use' must be caused, without the intervention of other persons or conditions, by something pertaining to matter—in other words, a direct physical intrusion on to the insured property[,] [and] Mayor Bowser's orders were not such a direct physical intrusion." *Id.* at *3.

The rejection of the plaintiffs' "loss of use" argument in *Gavrilides*, *Diesel Barbershop*, and *Rose's I* in the context of COVID-19 is consistent with many prior decisions dismissing similar arguments.[9] For example, in *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1

_____

[9] The district court's recent decision in *Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) is wholly inapposite here, for two reasons. First, the court relied entirely on the plaintiffs' allegations that "over the last several months, it is likely that customers, employees, and/or other visitors to the insured properties were infected with COVID-19 and thereby infected the insured properties with the virus." *Id*. at *2. The court concluded that the

(N.Y. App. Div. 2002), a Broadway theatre was forced to cancel numerous performances of a musical when the City closed off the block on which it was located after scaffolding attached to a nearby building collapsed. *Id.*, at 2-3. After its insurance claim was denied, the theatre owner sued its property insurer to recover for its business interruption losses. *Id.*, at 4. Reversing the trial court's entry of summary judgment for the insured, the appellate court rejected the insured's argument that loss of use of the theatre constituted a "direct physical loss," and held that that "the plain meaning of the words 'direct' and 'physical' narrows the scope of coverage and mandates the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy." *Id.*, at 7 (citations omitted); *see also Harry's Cadillac-Pontiac-GMC Truck Co. v. Motors Ins. Corp.*, 486 S.E.2d 249, 251 (N.C. App. 1997) (finding no "physical loss" sufficient to trigger business interruption coverage where heavy snowstorm made insured premises inaccessible); *Pentair, Inc. v. American Guar. and Liab. Ins. Co.*, 400 F.3d 613, 617 (8th Cir. 2005) (rejecting insured's argument that "mere loss of use or function of property constitutes 'direct physical loss or damage'"); *Northeast Georgia Heart Ctr., P.C. v. Phoenix Ins. Co.*, 2014 WL 12480022, at *6 (N.D. Ga. May 23, 2014) ("The court will not expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way. To do so would be equivalent to erasing the words 'direct' and

---

complaint had sufficiently pleaded direct physical loss only by alleging that "COVID-19 allegedly attached to and deprived Plaintiffs of their property, making it 'unsafe and unusable, resulting in direct physical loss to the premises and property.'" *Id.* at *4. Here, not only have Plaintiffs not made any comparable allegations, in moving for summary judgment Plaintiffs are required to provide *evidence* to support their claims, and there is a complete failure of proof that SARS-CoV-2 was present on property at any of Plaintiff's insured premises. *See id.* at *8 (noting that at the summary judgment stage, evidence of the virus on the insured premises would be necessary to support the allegations made). Second, unlike in *Studio 417*, the Policy here includes a virus exclusion which expressly bars Business Income coverage premised on any claimed "damage" to property caused by a virus, even if Plaintiff could submit evidence of such "damage" (and it has not).

'physical' from the policy."); *J. O. Emmeric & Assocs., Inc. v. State Auto Ins. Cos.*, 2007 WL 9775576, at \*5 (S.D. Miss. Nov. 19, 2007) (where insured was denied access to computer data during power outage, there was no "direct physical loss of or damage to" property); *Herr v. Forghani*, 161 Wash. App. 1037, 2011 WL 1833829, at \*7-8 (2011) (unpublished) (explaining that insured "must show direct physical loss to tangible property," and "alleged loss of use of his property caused by the supposed increased easement use" was not covered); *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.,* 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) ("The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure.").

On page 7 of its Memorandum, Plaintiff cites a number of decisions for the proposition that "there can be a physical loss of a building without there having been a physical alteration of the building." (Memo., pg. 7). That is a mischaracterization of those authorities. Each case involved a physical condition or physical manifestation on or immediately adjacent to the property that was proven to render it uninhabitable or unusable. For example, in *Sentinel Management Co. v. New Hampshire Ins. Co.*, 563 N.W.2d 296 (Minn. App. Ct. 1997), the court found the requirement of "physical loss" satisfied due to the presence of friable asbestos inside the insured buildings which rendered them hazardous. *Compare Port Authority of New York and New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3d Cir. 2002) (finding no coverage where asbestos was not friable and building was not uninhabitable). Similarly, in *Matzner v. Seaco Ins. Co.*, 9 Mass. L. Rptr. 41, 1998 WL 566658 (Mass. Sup. Ct. Aug. 12, 1998), an unpublished trial court decision, it was held that the pervasive presence of carbon monoxide gas

in the insured's home rendered it uninhabitable, while in *Motorists Mut. Ins. Co. v. Hardinger*,

131 Fed. Appx. 823, 826 (3d Cir. 2005), the harmful material that made the home uninhabitable

was *E. coli* bacteria that polluted the artesian well attached to the home.  Unlike the insureds in

those cases, Plaintiff has not submitted any evidence that SARS-CoV-2 was present in any of the

Relevant Premises, let alone that the virus rendered the premises unfit for use or occupancy.

And even if that were the case, the virus exclusion in the Policy would expressly bar coverage.

For several reasons, Plaintiff's theory that Business Income coverage is potentially

triggered by a mere loss of use of insured premises runs afoul of the basic principle of

Pennsylvania insurance law that "an insurance policy, like every other written contract, must be

read in its entirety and the intent of the policy is gathered from consideration of the entire

instrument."  *Riccio v. Am. Republic Ins. Co.*, 705 A.2d 422, 426 (Pa. 1997).  *First*, where

Business Income coverage applies, time period during which coverage is provided is the "period

of restoration."  (Policy, pg. 41 of 101).  The "period of restoration" generally ends on "[t]he

date when the property at the described premises should be repaired, rebuilt or replaced with

reasonable speed and similar quality."  (*Id.*, pg. 50 of 101) (emphasis added).  Courts have

repeatedly recognized that this definition contemplates that Business Income coverage requires a

physical change to insured property that is capable of being remedied through repair or

replacement.  *See, e.g. Newman Myers*, 17 F. Supp. 3d at 332 ("The words 'repair' and 'replace'

[in the policy's definition of 'period of restoration'] contemplate physical damage to the insured

premises as opposed to loss of use of it."); *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F.

Supp. 2d 280, 287 (S.D.N.Y. 2005) ("'Rebuild,' 'repair' and 'replace' all strongly suggest that

the damage contemplated by the Policy is physical in nature."); *Harry's Cadillac*, 486 S.E.2d at

251 ("The business interruption clause does not cover all business interruption losses, but only

those losses requiring repair, rebuilding or replacement."); *Roundabout Theatre Co. v. Cont'l Cas. Co.,* 302 A.D.2d 1, 7-8 (N.Y. App. Div. 2002) (similar).  Here, Plaintiff has put forth no evidence demonstrating that any property at its insured locations must be repaired, rebuilt or replaced.

*Second*, the Policy, when read as a whole, makes clear that a bare loss of use unaccompanied by any physical loss or damage is not covered because the Policy contains an express exclusion stating that "[w]e will not pay for loss or damage caused by or resulting from . . . loss of use….." (Policy, pg. 54 of 101).  Construing the phrase "direct physical loss or damage" to encompass an alleged loss of use unaccompanied by a physical alteration of insured property would nullify the "loss of use" exclusion altogether.  *See Toffler Assocs., Inc. v. Hartford Fire Ins. Co.*, 651 F. Supp. 2d 332, 344 n.3 (E.D. Pa. 2009) ("The Court must avoid interpreting the Policy in a way that makes any term meaningless or superfluous."); *see also Schneider Equip., Inc. v. Travelers Indem. Co. of Ill.*, 2006 WL 2850465, at *1, 5-6 (D. Or. Sept. 29, 2006) (where well could not produce anticipated volume of water and was determined to be unusable as a result of a damaged screen, court held that loss of use exclusion, among other exclusions, applied).

Finally, in addition to excluding loss and damage caused by virus, the Policy contains two exclusions that bar coverage for a loss caused by a government order.  The Policy's Acts or Decisions exclusion provides that there is no coverage for "loss or damage caused by or resulting from . . . [a]cts or decisions, including the failure to act or decide, of any person, group organization or governmental body."  (Policy, pg. 55-56 of 101).  Courts across the country have

repeatedly held that similarly-worded exclusions are unambiguous and bar coverage for loss of or damage to insured property that is caused by an act or omission of a governmental body.[10]

Similarly, the Policy's Ordinance or Law exclusion provides that Travelers "will not pay for loss or damage caused directly or indirectly by . . . [t]he enforcement of or compliance with any ordinance or law . . . [r]egulating the… construction, use or repair of any property." (Policy, pg. 52 of 101) (emphasis added).  As a New York appellate court has explained, this exclusion "clearly and unambiguously excludes coverage . . . for losses, including business income losses, caused by the enforcement of the law."  *Ira Stier, DDS, P.C. v. Merchants Ins. Grp.*, 127 A.D.3d 922, 924 (N.Y. App. Div. 2015) (holding that, where dental practice could not operate due to ordinance requiring certificate of occupancy, Ordinance or Law exclusion precluded coverage for plaintiff's business income losses).  Both the Acts Or Decisions and Ordinance Or Law exclusions apply here to the extent that Plaintiff contends that "government directives" issued in response to COVID-19 effectively closed Plaintiff's business.  (Memo., pg. 8).  Any financial

---

[10] *See Jernigan v. Nationwide Mut. Ins. Co.*, 2006 WL 463521, at *10-11 (N.D. Cal. Feb. 27, 2006) (Acts or Decisions exclusion applied to loss caused by, among other acts or decisions, a town's "stop-work order"); *Cytopath Biopsy Lab., Inc. v. U.S. Fid. & Guar. Co.*, 774 N.Y.S.2d 710, 711 (N.Y. App. Div. 2004) (Acts or Decisions exclusion barred coverage where "the real losses claimed herein resulted from refusal by the authorities to permit resumption of operations"); *Johnson Gallagher Magliery, LLC v. Charter Oak Fire Ins. Co.*, 2014 WL 1041831, at *7 (S.D.N.Y. Mar. 18, 2014) (granting insurer's motion for partial summary judgment on Acts or Decisions exclusion where electric utility's decision to shut down power resulted in plaintiff's business income loss); *Stephens v. Liberty Mut.*, 2008 WL 480287, *21 (N.D. Cal. Feb. 19, 2008) (finding that Acts or Decisions exclusion "logically includes 'acts or decisions' of third parties" and bars coverage for physical damage to building caused by actions of contractor); *Duarte & Witting, Inc. v. Universal Underwriters Ins. Co.*, 2006 WL 2130743, *11 (N.D. Cal. July 27, 2006), *aff'd*, 291 F. App'x 807 (9th Cir. 2008) (applying Acts or Decisions exclusion and noting that "third party actions are also specifically excluded under the terms of the current policy"); *Legal Servs. Plan of E. Michigan v. Citizens Ins. Co. of Am.*, 2009 WL 1175514, at *4 (Mich. Ct. App. Apr. 30, 2009) (Acts or Decisions exclusion barred coverage for claim of damage caused by construction activities, holding that "[b]ecause the construction activity constitutes 'acts,' any damage caused by that activity is not covered").

loss Plaintiff claims to have sustained as a result of these governmental acts are expressly and unambiguously excluded from coverage.  For this additional reason, Plaintiff is not entitled to partial summary judgment, and Travelers is entitled to judgment on the pleadings.

In conclusion, the virus exclusion is but one reason why Plaintiff is not entitled to the requested ruling on the Policy's Business Income Coverage.  Plaintiff's theory that a mere loss of use constitutes the requisite "direct physical loss of or damage to property" fails as a matter of law, and, in any case, Plaintiff has failed to supply any evidence to support its claims.

> **D.    Plaintiff Has Failed to Establish Entitlement to Civil Authority Coverage as Matter of Law**

As explained above in Section IV.A., Plaintiff's Motion should be denied because its claimed loss falls squarely within the Policy's virus exclusion.  However, even if one were to assume for purposes of argument that the virus exclusion does not apply, Plaintiff still would not be entitled to a ruling that it is entitled to coverage under the Civil Authority provision, as Plaintiff has not supplied, and cannot supply, evidence to establish the requirements set forth in the insuring agreement for Civil Authority coverage.

The requirements for Civil Authority are stated in terms that are plain and clear. The insuring agreement provides that:

> When a <u>Covered Cause of Loss</u> causes <u>damage to property other than property at the described premises</u>, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> > **(1)**   <u>Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage</u>, and the described premises are within that area but are not more than one mile from the damaged property; and
> >
> > **(2)**   The action of civil authority is <u>taken in response to dangerous physical conditions resulting from the damage</u> or <u>continuation of the Covered Cause of Loss that caused the</u>

> damage, or the action is <u>taken to enable a civil authority to
> have unimpeded access</u> to the <u>damaged property</u>.

(Policy, pg. 42 of 101 (emphasis added)).

Thus, to be entitled to Civil Authority coverage, Plaintiff must adduce evidence proving, as a matter of undisputed fact, among other things, that:

- A Covered Cause of Loss caused damage to property other than property at the Relevant Premises which resulted in a civil authority action prohibiting access to the Relevant Premises;

- The civil authority also prohibited access to an area "immediately surrounding" the damaged property, and one of the Relevant Premises was within that surrounding area, but not more than one mile from the damaged property; and

- The action of civil authority was: (1) taken in response to dangerous physical conditions resulting from the damage to the property other than at described premises, or in response to the continuation of the Covered Cause of Loss that caused the damage; or (2) the action was taken to enable a civil authority to have unimpeded access to the damaged property.

Identification of the "property other than property at the described premises" that was damaged (also referred to as "the damaged property" in the Civil Authority coverage) is essential to the establishment of entitlement to Civil Authority coverage. If the location of "damaged property" is not identified by the civil authority, then an insured cannot possibly prove: (1) that the described premises is within one mile of the "damaged property;" or (2) that access was prohibited to an area immediately surrounding the "damaged property" that included the described premises.

Here, Plaintiff has put forth no evidence to show that any governmental order was in fact issued in response to any damage to property at any location, let alone within one mile of any Relevant Premises. Critically, none of government orders upon which Plaintiff bases its claim identifies <u>any</u> property in Delaware, New Jersey or Pennsylvania that sustained any form of

property damage. Indeed, those government orders make no mention of any concern with property damage generally. Rather, the orders were issued for public health reasons, as explained below.

In place of such evidence, Plaintiff simply suggests SARS-CoV-2 might have been present or – at some unspecified time in the future – might become present.[11]  Thus, Plaintiff asks the Court to simply assume that SARS-CoV-2 is capable of causing damage to property, and that it has already caused such damage at a location within one mile of at least one of Plaintiff's relevant premises. As the party with the burden of proof at trial and the burden of production at summary judgment, however, Plaintiff was required to provide evidence of the foregoing. *See In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003).  This Plaintiff failed to do. Moreover, even if Plaintiff could provide such evidence, it would be irrelevant to the determination of coverage unless the governmental order was issued "as a result of the damage."

Plaintiff has also failed to prove that the government orders which it claimed forced the closure of its business were issued "as a result of [any] damage" to any non-insured property, "in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or . . . to enable a civil authority to have unimpeded access to the damaged property." (Policy, pg. 42 of 101). Courts have consistently held that similar policy provisions require "a <u>causal link</u> between <u>prior</u> damage and civil authority action."  *Dickie Brennan & Co. v. Lexington Ins. Co.*, 636 F.3d 683, 687 (5th Cir. 2011) (emphasis added); *see also South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL

---

[11] As explained above, Plaintiff also has not provided any expert opinion or other evidence from which a trier of fact could possibly conclude that SARS-CoV-2 is capable of physically altering surfaces on which it comes to rest. In addition, Plaintiff has offered no evidence that SARS-CoV-2 was in fact present at any particular property, let alone property within one mile of any of Plaintiff's relevant premises at any time.

450012, at *8 (S.D. Tex. Feb. 15, 2008) (recognizing that claim for civil authority coverage requires proof of a "close causal link" between previous property damage and civil authority order); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375, at *3 (E.D. La. Oct. 12, 2010) ("The direct nexus between the damage sustained and the order that the policy requires suggests that the Policy was designed to address the situation where damage occurs and the civil authority subsequently prohibits access.").

The government orders attached as Exhibits B, C and D to Plaintiff's Memorandum (ECF Nos. 5-3, 5-4, 5-5) stand as the only record evidence on the question of why the Governors of Pennsylvania, New Jersey and Delaware enforced social distancing requirements during the COVID-19 pandemic.  None of those orders mentions damage to property at any location as a reason for the Governor's action.  (*See generally* ECF Nos. 5-3 through 5-5). Rather, the text of the orders plainly reveals that the Governors acted in response to the public health emergency associated with SARS-CoV-2 and COVID-19, and for the purpose of curbing the further spread of that deadly disease.  Thus, the contentions in Plaintiff's Memorandum "(a) that the government directives were caused, in part, by their concern that, absent a closing of the buildings to business, the building would inevitably become infested with virus, and (b) that as a result, the government directives can be said to have been caused by property damage" have no evidentiary support and, therefore, are purely fictitious. (Memo., pg. 18). Because the government orders in the record before the Court unequivocally show that the Governors did <u>not</u> act in response to dangerous physical conditions resulting from damage (from a Covered Cause of Loss) to property other than at the Relevant Premises, in response to the continuation of any Covered Cause of Loss, or for the purposes of enabling a civil authority to have unimpeded

access to any damaged property, Plaintiff has not and cannot establish its entitlement to Civil Authority coverage.

Finally, even if one could overlook the complete failure of proof on the elements of Civil Authority coverage, and even assuming there were proof that the Governors issued their orders because of property damage allegedly caused by SARS-CoV-2, Civil Authority coverage still would not be available as a matter of law because SARS-CoV-2 is an excluded cause of loss as explained above, and only damage to property away from insured premises from a Covered Cause of Loss gives rise to Civil Authority coverage.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff clearly has not met its burden of establishing all of the elements of Business Income and Civil Authority coverage through credible evidence, and the losses it claims are excluded by the Policy's virus exclusion. Accordingly, Plaintiff is not entitled to partial summary judgment on its claim for breach of contract. Its Motion should be denied.

Respectfully submitted,

By:    */s/ Richard D. Gable, Jr.*
Richard D. Gable, Jr. (Pa. ID No. 65842)
Butler Weihmuller Katz Craig LLP
1818 Market Street
Suite 2740
Philadelphia, PA 19103
Tel: 215-405-9191
Fax: 215-405-9190
E-mail: rgable@butler.legal

Gregory P. Varga (admitted *pro hac vice*)
J. Tyler Butts (admitted *pro hac vice*)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103
Tel: 860-275-8200
Fax: 860-275-8299

E-mail: gvarga@rc.com
E-mail: jbutts@rc.com

*Attorneys for Defendant Travelers Property Casualty Company of America*

## CERTIFICATE OF SERVICE

I, Richard Gable, certify that on August 24, 2020, I caused a true and correct copy of the foregoing to be served via ECF upon the following:

Daniel J. Dugan, Esq.
1635 Market Street, 7th Floor
Philadelphia, PA 19103
ddugan@sgrvlaw.com
*Attorney for Plaintiff Toppers Salon & Health Spa, Inc.*

*/s/ Richard Gable*

31