IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOPPERS SALON & HEALTH SPA, INC., <br><br> *Plaintiff* <br><br> v. <br><br> TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, <br><br> *Defendant.* | Case No. 2:20-cv-03342-JDW |

## MEMORANDUM

There was a time not so long ago when someone seeking an escape from day-to-day pressures could count on a trip to a spa, like Marge Simpson at Rancho Relaxo.[1] But like so many other things, the Covid-19 pandemic has upended that norm. Like so many other businesses, state and local governments have at times issued orders closing spas to prevent the virus's spread. Those businesses have, in turn, looked to recoup their losses from insurers. This is one such case.

Plaintiff Toppers Salon & Health Spa, Inc. seeks coverage for the government-mandated suspension of its businesses in Pennsylvania, New Jersey, and Delaware. The commercial property policy that Toppers purchased from Travelers Property Casual Company of America offers coverage for many interruptions to Toppers' business. But it does not cover Covid-19, both because it includes an exclusion that applies to virus-related losses and because the various governmental orders do not trigger coverage under Toppers' policy. The Court will therefore grant Travelers' motion for judgment on the pleadings and deny Toppers' motion for partial summary judgment.

---

[1] *See* The Simpsons: Homer Alone (Fox TV Broadcast February 6, 1992).

1

I.  BACKGROUND

   A.  The Policy

Toppers operates a chain of day spas in Pennsylvania, New Jersey, and Delaware. It receives commercial property insurance coverage from Travelers under a policy from October 2019 for its locations in Philadelphia, Wayne, and Newtown, Pennsylvania; Marlton, New Jersey; and Dover, Delaware. Among other things, the Policy includes a Business Income Coverage Form that offers Toppers coverage in the event of certain interruptions to its business. Relevant here, that Form includes both Business Income coverage and Civil Authority coverage.

The Policy covers Business Income loss that Toppers sustains "due to the necessary suspension of your 'operations' during the 'period of restoration,'" if the suspension was "caused by direct physical loss of or damage to property at [the insured's] premises." (ECF No. 5-2 at 41.) The Policy defines the period of restoration as the "period of time after direct physical loss or damage" and "when the premises should be repaired, rebuilt, or replaced with reasonable speed and similar quality." (*Id.* at 50.) Business Income includes "net income … *plus* continuing normal operating expenses incurred, including payroll." (*Id.* at 41) (emphasis added).

The "Civil Authority" provision covers loss of Business Income and extra expenses incurred due to damage to property other than property at the insured's premises, when as a result of "dangerous physical conditions," a civil authority's actions prohibit access to both the insured's premises and the area immediately surrounding the damaged property. (*Id* at 42.) The damaged property must be within one mile of the insured's premises to enable a civil authority to have unimpeded access to the damaged property.

The Policy excludes coverage for any "loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.* at 82 (the "Virus Exclusion").) The Exclusion applies to "all coverage under all forms and endorsements" including Business Income and Civil Authority coverage. (*Id.*)

### B.   The Shutdown Orders

In March 2020, Pennsylvania, New Jersey, and Delaware, issued sweeping stay-at-home orders to mitigate the further spread of the Covid-19 virus. Those Shutdown Orders referenced that the virus can be transmitted through contact with surfaces and through exposure to airborne particles. As a result of these Orders, Toppers had to suspend operations at all of its locations. In June 2020, Toppers filed a coverage claim for its operating expenses during the suspension period. Travelers denied Toppers' claim later that month. It explained that Toppers' loss did not satisfy the Policy's Business Income or Civil Authority coverage provisions and was also subject to the Policy's Virus Exclusion, as well as several other exclusions.

### C.   Procedural History

On July 8, 2020, Toppers filed this action against Travelers for breach of contract for failure to provide coverage under the Policy. Both parties requested pre-trial judgment: Toppers moved for partial summary judgment, while Travelers moved for judgment on the pleadings. Both Motions are ripe for decision.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material

3

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted).

### B. Judgment on the Pleadings

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A court can grant a Rule 12(c) motion "if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law." *Fed Cetera, LLC v. Nat'l Credit Servs., Inc.*, 938 F.3d 466, 470 n.7 (3d Cir. 2019) (quotation omitted). A Rule 12(c) motion "is analyzed under the same standards that apply to a Rule 12(b)(6) motion[,]" construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019) (quotation omitted).

### III. DISCUSSION

The parties agree that Pennsylvania insurance law applies. Under Pennsylvania law, the goal in interpreting an insurance policy, "as with interpreting any contract, is to ascertain the parties' intentions, as manifested by the policy's terms." *Kvaerner Metals Div. of Kvaerner, U.S. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006). A court should not consider individual items in isolation. It must consider the entire insurance provision to ascertain the intent of the parties. *See 401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005).

When policy language is clear and unambiguous, a court applying Pennsylvania law must give effect to that language. *See Kvaerner Metals*, 908 A.2d at 897. When a provision in the policy is ambiguous, a court must construe the policy "in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *401 Fourth St.*, 879 A.2d at 171. "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* (quote omitted).

### A.   The Virus Exclusion

The Virus Exclusion applies to "loss or damage caused by or resulting from any virus … that induces or is capable of inducing physical distress, illness or disease." The language is not ambiguous, and it applies to Covid-19, which is caused by a coronavirus that causes physical illness and distress. *See Brian Handel D.M.D., P.C. v. Allstate Ins. Co.*, Civ. No. 20-3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020) (similar virus exclusion barred coverage). Other courts considering Travelers' policies under other states' laws have reached the same conclusion.[2]   That means that the Virus Exclusion applies to Toppers' insurance claim.

Toppers concedes that the Virus Exclusion applies. It argues that the exclusion does not extend to claims for continuing expenses because those expenses are not a "loss" or a "damage." Toppers' argument ignores both the Policy's language and structure. First, the Policy uses the word "loss," but it does not define it. The Court must therefore give it its plain

---

[2] *See Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 6503405, at *8 (S.D. Miss. Nov. 4, 2020); *Travelers Cas. Ins. Co. of Am. v. Geragos and Gergaos*, No. CV 20-3619 PSG (Ex), 2020 WL 6156584, at *4 (C.D. Cal. Oct. 19, 2020); *Mark's Engine Co. No. 28 Rest., LLC v. The Travelers Indem. Co. of Conn.*, No. 20-04423, Order (C.D. Cal. Oct. 2, 2020); *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-CV-04418-SVW-AS, 2020 WL 5359653, at *6 (C.D. Cal. Sept. 2, 2020).

and ordinary meaning. *See Pa. Manufacturers' Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co.*, 233 A.2d 548, 551 (Pa. 1967). In the insurance context, a "loss" is the "amount of financial detriment caused by … an insured property's damage." Black's Law Dictionary 1087 (10th ed. 2009). More generally, the word refers to an "undesirable outcome of a risk" (*id.*) or an "amount of money lost by a business or organization" (New Oxford American Dictionary 1033 (3d ed. 2010)*.*

Both the failure to collect income and the payment of continued expenses fall within these definitions of "loss." In addition, the Policy's structure indicates that the parties intended the word "loss" to cover both lost income and continuing expenses. Under the Policy, "Business Income" includes both net income and continuing expenses, and the Policy provides coverage for any "loss of Business Income." (ECF No. 5-2 at 41.) Under the heading "Loss Determination," it describes the way that the parties anticipated determining the "amount of Business Income loss." (*Id.* at 46.) And the Policy includes a provision that imposed on Toppers certain duties in the event of a "loss." (*Id.*) These provisions, read as a whole, demonstrate that the parties intended the term "loss" to extend to all types of Business Income, including covered expenses. Toppers' argument to the contrary does not analyze the Policy's text; it does not point to a different definition of "loss;" and it does not account for the Policy's overall structure. As a result, it does not carry the day.

### B.   Coverage

Even if the Virus Exclusion did not bar coverage, Toppers would not be able to show that the Policy covers its claim, either under the Business Income or the Civil Authority coverage.

1. **Business Income coverage**

Under the Policy, Toppers can obtain Business Income coverage if it must suspend its operations during a period of restoration as a result of "direct physical loss of or damage to" its premises. (ECF No. 5-2 at 41.) No one disputes that Toppers suspended its operations at each of its premises as a result of the Shutdown Orders. So the only question is whether physical loss or damage caused that suspension. It did not.

The Policy only pays Business Income coverage during a period of restoration. The Policy measures that period from the start of the physical loss until the "date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality" or when "business is resumed at a new permanent location." (*Id.* at 50.) In addition, the Policy includes special exclusions for the Business Income coverage that apply to an "increase of loss caused by or resulting from [a d]elay in resulting, repairing, or replacing the property due to interference at the location by strikers or other persons." (*Id.* at 56.) These provisions make clear that there must be some sort of physical damage to the property that can be the subject of a repair, rebuilding, or replacement. The Covid-19 pandemic does not fall within that definition.

Toppers admits that it will never trigger the end point for the period of restoration. (ECF No. 19 at 7.) It claims that fact demonstrates only that Travelers cannot prematurely end its coverage. But Toppers' argument misses the point. The parties' agreement to measure the period of restoration against the time it takes to repair the premises indicates that they intended the Policy to cover losses for physical damage, and that intent controls the Court's interpretation of the Policy.

Toppers also argues that Policy's use of the phrase "loss of" the premises means the loss of use of the premises. The Court agrees. But that does not save Toppers because it

ignores the question of why Toppers lost use of the premises. It did not lose use because the premises suffered physical damage. Business Income coverage does not apply.

### 2. Civil Authority coverage

The Policy's Civil Authority coverage applies only if there is "damage to property other than property at the described premises" and if a civil authority prohibits access to the area immediately around the covered premises in response to dangerous physical conditions in the area. (ECF No. 5-2 at 42.) But Toppers did not close because of damage to a nearby premise or because there was some dangerous physical condition at another nearby premise. It closed because the Shutdown Orders applied to its own operations. Its shutdown and resulting losses fall outside the scope of the Civil Authority coverage.

## IV. CONCLUSION

Businesses nationwide have struggled to stay afloat during the pandemic. While the pandemic has affected Toppers' salons, the Policy's Virus Exclusion is unambiguous and bars Toppers' coverage claim. Toppers also cannot show that Covid-19 or the Shutdown Orders caused it physical damage or reparable loss under the Policy. Therefore, Toppers is not entitled to summary judgment. On the contrary, Travelers has demonstrated that it is entitled to judgment on the pleadings. An appropriate Order follows.

BY THE COURT:

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

November 30, 2020